**In the Matter of PAGE EXPRESS, INC., Bankrupt.**

**No. 30183.**

United States District Court
D. Connecticut.
July 11, 1963.

John W. Barnett, Wiggin & Dana, New Haven, Conn., for petitioner.

Norton M. Levine, New Haven, Conn., for Trustee in Bankruptcy.

Bernard J. Virshup, Merriam & Virshup, New Haven, Conn., for Page Express, Inc.

ANDERSON, Chief Judge.

 Petitioner, Humble Oil & Refining Company, is a distributor of gasoline in the State of Connecticut. Between September 1, 1959 and March 14, 1961, it sold and delivered to Page Express, Inc., a quantity of gasoline. As such distributor, petitioner, before the 25th day of each of the months during the period, made a record of the gallons of gasoline distributed to Page Express during the preceding month and sent a report of such distributions to the Connecticut State Tax Commissioner on forms supplied by the Commissioner. With each such report petitioner paid to the Tax Commissioner the tax of 6 cents per gallon which, as distributor, it was required to pay on the gasoline sold and delivered to Page Express.[1] For the

---

1. § 12–457. *"Records to be kept by distributor. Statement to purchaser.* Each distributor shall keep an accurate record of the number of gallons of such fuels purchased, manufactured, compounded or received by him, the date of any such purchase and the number of gallons sold or used by him. He shall deliver, with each consignment or delivery of such fuels to any purchaser within this state, a written statement of the names and addresses of the vendor and vendee, the number of gallons sold and the date of sale and delivery. Such written statement shall set forth whether or not the required state tax has been charged thereon. Each such record and such statement shall be preserved by such distributor and such purchaser, respectively, for a period of at least three years and shall be offered for inspection upon demand of the commissioner or any officer or agent designated by him. The commissioner shall cause such records and statements to be regularly audited as he shall prescribe and each distributor shall satisfactorily account for all such fuels as have been sold or used by him." Conn.Stats.Rev.1958.

§ 12–458. *"Report to commissioner. Rate and payment of tax.* Each distributor shall, on or before the twenty-fifth day of each month, render a report to the commissioner, which shall state the number of gallons of fuel sold or used by him in this state during the preceding calendar month, on forms to be furnished by the commissioner, and such report shall contain such further information as the commissioner shall prescribe. On said date and coincident with the filing of such report each distributor shall pay to the commissioner for the account of the purchaser or consumer a tax of six cents on each gallon of such fuels sold or used in this state during the preceding calendar month, except such fuel as may have been sold to the United States

period in question these monthly tax payments totalled $1,962.78. Thereafter, Page Express, Inc. was adjudicated a bankrupt.

Petitioner filed a preferred claim against the debtor's estate for $1,962.78, asserting priority under § 64, sub. a(4) of the Bankruptcy Act, on the ground that the money was used to pay taxes and that petitioner was subrogated to the State's priority right. The Referee decided that petitioner had a general claim only and refused to give it priority.

Petitioner asserts that the primary liability for payment of the gasoline tax rests upon the debtor as purchaser. If this is not so, but, instead, the tax is primarily the debt of the petitioner, there can be no subrogation. Gulf Oil Corp. v. Grady, 110 F.2d 178 (2d Cir. 1940). An examination of the pertinent sections of Chapter 221 of the Connecticut statutes [2] leads this court to conclude

government, or sold by one licensed distributor to another licensed distributor, or transferred from storage within this state to some point outside of this state, for sale or use outside of this state. Any distributor failing to pay said tax when due shall be liable for interest at the rate of nine per cent per annum on the amount of tax from the time when the tax becomes payable until the same is paid." Conn.Stats.Rev.1958.

2. § 12–456. *"Distributor's license. Surety bond. Service of process on nonresident distributor.* Each distributor shall, before transacting the business of a distributor, procure a license from the commissioner to engage in said business within this state, which license shall remain in full force and effect until cancelled, suspended or revoked. Before the commissioner issues such license, such distributor shall file with, and to the satisfaction of, the commissioner and shall maintain for the duration of such license a bond of a surety company authorized to do business in this state, in an amount, to be determined by the commissioner, of not less than five hundred dollars nor more than twenty-five thousand dollars, conditioned upon the payment of the tax imposed by section 12–458. Such bond may be in force, at the option of the distributor, for a period of one or more years, but not more than five years; provided the commissioner may change the amount thereof at any time. If such distributor is a foreign corporation or a person nonresident of this state with no designated agent or representative in this state upon whom service of process may be made, then, in any litigation for the collection of any tax due from such distributor, service of such process may be made upon the secretary of the state with as full force and effect as if made upon such distributor. Any such distributor being such a foreign corporation or nonresident person shall, in the application for a distributor's license, con-

sent to such service of process upon the secretary of the state and also consent that any such litigation may be brought to the court for Hartford county having jurisdiction of the amount claimed to be due in such litigation. Any license to any such distributor shall be issued subject to such service of process upon said secretary and subject to such litigation being brought to such court." Conn. Stats.Rev.1958.

"§ 12–461. *Appeal by distributor.* Any distributor aggrieved by the imposition of any tax under the provisions hereof may, within ninety days from the time of the payment of such tax, make application in the nature of an appeal to the superior court for the county of Hartford for a readjustment of such tax. * * * Said court shall have power to order the refund of so much of the amount of such tax as was illegally imposed, and, upon such application, costs may be taxed at the discretion of the court." Conn.Stats.Rev.1958.

"§ 12–463. *Suspension or revocation of distributor's license. Appeal.* Upon the violation by any distributor of any provision of this chapter, the commissioner may suspend or revoke such distributor's license. Any such person whose license has been revoked may, within thirty days from the date of revocation, make application in the nature of an appeal to the superior court for the county of Hartford for a rehearing upon such revocation. Such appeal shall be returnable at the same time and served and returned in the same manner as is required in the case of a civil action, and the person taking the appeal shall give a bond or recognizance in the sum of one hundred dollars to the commissioner, with surety, to prosecute such application to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first

for the purpose of considering a claim in bankruptcy, that, contrary to petitioner's position, the primary responsibility for the payment of the gasoline tax is imposed upon the petitioner-distributor. While the purchaser is exposed to a civil action by the Tax Commissioner under § 12–464 if he has not made the payment after the distributor has failed to do so under § 12–458, it is § 12–458 which sets out the rate of the tax and the person required to pay it, and it specifies the distributor as that person. It calls for no action at all on the part of the purchaser. The distributor also is required to be licensed and, as a prerequisite thereto, it is obligated to furnish a bond conditioned upon payment of the tax. Moreover, § 12–464 imposes a criminal sanction upon the distributor for failing to comply with § 12–458 but places no such penalty on the purchaser. The petitioner argues that the purchaser is made primarily liable for the payment of the tax by that portion of § 12–458 which says " * * * each distributor shall pay to the commissioner for the account of the purchaser or consumer a tax * * * " While it is true that the general underlying purpose of the gasoline tax statutes is to place an excise tax upon motor vehicle users of the public highways and the phrase "for the account of the purchaser or consumer" recognizes that the tax is customarily passed along from distributor to purchaser and ultimately to consumer, Spencer v. Consumers Oil Co., 115 Conn. 554, 162 A. 23 (1933), Anastasio v. Gulf Oil Corp., 131 Conn. 708, 42 A.2d 149 (1945), nevertheless, neither the statutes nor the cases seek to place an affirmative duty on the purchaser to reimburse the distributor or to say that it is primarily the purchaser's debt. On the contrary, the court said in Anastasio, bottom of page 715 and top of page 716 of 131 Conn., page 153 of 42 A.2d, " * * * the distributor is not required to collect from the purchaser the amount of tax levied on gasoline the latter buys * * '" and the "reporting" section of the statute, § 12–457, does not ask for a report that the purchaser *has been charged* the tax but "whether or not the required state tax has been charged." The phrase in § 12–458 "for the account of the purchaser or consumer" was not to create a right-duty relationship for payment of the tax by purchaser or consumer to distributor but was intended as a necessary part of administrative record keeping to afford a breakdown of the total monthly distributions of gasoline by a distributor so that the tax commissioner would know against what purchaser to proceed under § 12–464 if the distributor defaulted, to preserve materials for investigative procedures, and, in the case of consumers, to check tax payments where refunds were sought.

Section 12–459, providing for a refund to a user, is not persuasive to show that the purchaser or user is the one primarily responsible for payment of the tax, because it is only in the event that the non-highway user can show that he has had the tax passed along to him and that he has paid it, that he can obtain a refund. The refund portion of § 12–461, however, provides for a refund to the distributor, the only one having a statutory right to appeal in the event of a finding of illegal exaction. The obligation of the purchaser to reimburse the distributor for the tax and the duty of the user or consumer to reimburse the purchaser are left to the consensual arrangements of

session of the court. If said court, upon such appeal, determines that the license should not have been revoked, it may direct the commissioner to reissue the same, and, upon such appeal, costs may be taxed at the discretion of the court." Conn.Stats.Rev.1958.

§ 12–464. *"Penalty.* Any distributor who violates any provision of sections 12–455 to 12–462, inclusive, or makes a false or fraudulent return shall be fined not more than two thousand dollars. Whenever any distributor or purchaser fails to pay any tax due under any provision of said sections within the time limited therein, the tax commissioner shall enforce payment of such tax by civil action against such distributor or purchaser in a court of appropriate jurisdiction." Conn.Gen.Stats.Rev.1958.

the parties. The State of Connecticut is completely indifferent to the question of whether or not the tax is passed along. In spite of the general theory that the tax is one on users of the public highways, the law of Connecticut has not, in the sense of fixing ultimate responsibility, made the purchaser or consumer primarily liable for the tax.

The tax is a debt due from the distributor. Anastasio v. Gulf Oil Corp., supra, 130 Conn. page 716, 42 A.2d page 153. Its collection is specifically enforceable by the State against the distributor through power to revoke his license, proceed on his bond, sue in civil action and invoke the penalty of a fine. It is difficult to see how, short of the criminal sanction of imprisonment, a person could become more "liable". The purchaser may only be proceeded against by civil action, § 12–464; and the structure of the statutes, § 12–455 through § 12–464, of which 12–464 is a part, makes it plain that recourse can be had against the purchaser only in case of a default in payment of the tax by the distributor. For example:, if a distributor sold 10,000 gallons of gasoline to a purchaser in June, an accounting for and payment of the tax on the gasoline would not be due, under § 12–458, until July 25th. Certainly the State Tax Commissioner could not, under § 12–464, bring a civil action against the purchaser on July 5th for the taxes accrued on the gasoline purchased during June. Such an action would lie only if the distributor had failed to pay the tax "within the time limited therein". It is because of this secondary exposure, or at most joint liability, of the purchaser that each of the petitioner's invoices to the debtor contain the following statement:

"The liability for state motor fuel tax shown on the invoice has been assumed, and will be paid, as required by law."

The obvious purpose of this clause was to reassure the purchaser that the distributor had paid the tax obligation which was the distributor's debt, and that the purchaser would not be subject to recourse for the tax under § 12–464.

Even though the courts of Connecticut should find that a distributor who has paid the gasoline tax is subrogated to a right of the state to collect the tax from the purchaser, the question of the right to priority of the claim in bankruptcy proceedings is a federal one. New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1940), City of New York v. Rassner, 127 F.2d 703 (2d Cir. 1942) and New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906).

In Gulf Oil Corp. v. Grady, supra, unlike the present case, the State of New York, under its statutes could not proceed against a purchaser even if the distributor defaulted, but the basic principle therein enunciated is the same, and that is, that where the payment of the tax is the primary obligation of the distributor, he is not subrogated to the State's tax claim, in spite of the fact that the statute itself said that its purpose was to place the ultimate burden of the tax on motor vehicle users of the public highways. This principle was applied in In re Newland, 115 F.2d 165 (3rd Cir. 1940) even though in a comparable situation the Pennsylvania statute provided that the tax should be collected by the distributor and "shall be borne by the consumer." See State of Louisiana et al. v. Atlas Pipeline Corp., 33 F.Supp. 160 (W.D.La. 1940).

The petitioner relies upon In re Columbia Tobacco Co., 121 F.2d 641 (2d Cir. 1941), and In re Rogers, 101 F.Supp. 555 (S.D.Cal.1951). Both of these cases involved the claims of surety companies which had been required, under the terms of their respective bonds, to pay taxes due the States. Both were subrogated to the priority tax rights of the States in the bankruptcies of the principals on the bonds, who were the persons primarily liable for payment of the taxes. As persons secondarily liable, the surety companies were allowed priority claims. As the one primarily liable for the gasoline taxes in the present case, the petitioner

cannot be granted that right. Petitioner also relies upon Texas Co. v. Blue Way Lines, Inc., 93 F.2d 593 (1st Cir. 1937) in which the court included in its opinion a dictum that a distributor under the Connecticut gasoline tax statute, who had paid the tax but had not been reimbursed by the purchaser, would be subrogated in the purchaser's bankruptcy to the priority tax right of the State. This dictum is at odds with the principles discussed in the Second Circuit case of Gulf Oil Corp. v. Grady, supra, and the Third Circuit case of In re Newland, supra. Texas Co. v. Blue Way Lines, Inc., supra, is erroneously cited in Anastasio v. Gulf Oil Corp., 131 Conn. at page 716, 42 A.2d at page 153 as the decision of the Second Circuit.

The order of the Referee is affirmed and the petition is dismissed.